UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRENDA C. FARMER,

      Plaintiff,

vs.                                                  Case No.  3:06-cv-406-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,[1]

      Defendant.
_____/

### MEMORANDUM OPINION AND ORDER[2]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits ("DIB") on December 22, 2003, alleging an inability to work since July 6, 2002.  (Tr. 49-52).  The Social Security Administration ("SSA") denied this application initially and upon reconsideration. (Tr. 24, 25).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on March 10, 2005.  (Tr. 35, 280-

_____

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration.  See Rule 25(d)(1), Fed.R.Civ.P.

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 8).

313).  On May 25, 2005, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 16-23).  On July 11, 2005, Plaintiff filed a Request for Review by the Appeals Council (Tr. 11) and on March 8, 2006, the Appeals Council denied that request.  (Tr. 5-8).  Accordingly, the ALJ's May 25, 2005 decision was the final decision of the Commissioner.  Plaintiff timely filed her Complaint in the U.S. District Court on May 5, 2006.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since July 6, 2002, due to fibromyalgia and an injury to her right foot.  (Tr. 50, 63).

### B.    Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was fifty-one years of age.   (Tr. 283).  She completed the tenth grade, obtained a general equivalency diploma ("GED") and took an accelerated computer programming class.  (Tr. 67, 284).  Plaintiff has past relevant work as a pest control worker, order clerk, order checker, convenience store clerk, and gambling dealer.  (Tr. 55, 268-88).  Plaintiff's medical history is discussed in the ALJ's decision and will be summarized here.[3]

The medical records submitted reveal that on July 6, 2002, Plaintiff tripped over a cord in a store and injured her right foot.  (Tr. 148).  As a result, Plaintiff saw podiatrist, Steven K. Greenhut, DPM, who noted that she had an injury to the right third metatarsal phalangeal joint. Id.  Plaintiff underwent surgery to repair her foot on December 11, 2002 and a second surgery in August 2003.  (Tr. 131, 143).

---

[3] Although the record contains several documents concerning Plaintiff's alleged mental impairments, such are not at issue and therefore, will not be discussed in this Opinion.

On December 11, 2003, Plaintiff saw Cecilia C. Olazar, M.D., a rheumatologist, regarding her complaints of "chronic polyarthralgias with special involvement of spine, knees, feet." (Tr. 178). Dr. Olazar ordered x-rays of Plaintiff's pelvis and knees. The x-ray of Plaintiff's pelvis revealed "degenerative joint disease minimally of the left sacroiliac joint compared to the right as well as minimal spurring of the lateral acetabulum on the left." (Tr. 180). The x-ray of Plaintiff's knees showed the "soft tissue to be normal, no effusion or calcification" with "minimal joint space narrowing with thinning of the patellofemoral as well as medial compartment bilaterally." Id. Dr. Olazar diagnosed Plaintiff with "chronic polyarthralgias which appear to be on the basis of developing early osteoarthritis with special involvement of the spine, hands, knees, feet" and fibromyalgia syndrome. (Tr. 179).

It appears Dr. Olazar referred Plaintiff to Brooks Rehabilitation clinic for physical therapy. The records indicate Plaintiff underwent physical therapy for a month and reported some improvement. (Tr. 157-166).

Two non-examining physicians completed Physical Residual Functional Capacity ("RFC") Assessments on Plaintiff on March 26, 2004 and August 8, 2004. (Tr. 185-92, 208-15). The first assessment was completed by Thomas S. Edwards, M.D. Dr. Edwards determined Plaintiff was occasionally able to lift up to 20 pounds, frequently able to lift and/or carry 10 pounds; was able to stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday; sit (with normal breaks) for a total of 6 hours in an 8-hour workday and had no limitations on her ability to push or pull with her upper or lower extremities. (Tr. 186). Dr. Edwards also determined Plaintiff could occasionally climb, kneel, and crawl. (Tr. 187). Dr. Edwards found Plaintiff was not subjected to any manipulative, visual, or communicative limitations. (Tr. 188-89). Finally, Dr. Edwards

opined that Plaintiff should avoid concentrated exposure to extreme cold and hazards, such as machinery and heights.  (Tr. 189).  The second assessment was completed by Daria F. Marranzini, M.D. and was identical to the first RFC assessment.  (Tr. 208-15).

In July 2004, Plaintiff began treatment with another podiatrist, Beth S. Pearce, DPM. On her first visit, Plaintiff reported severe pain in her right foot and rated her pain at the end of the day as a ten on a scale of one to ten.  (Tr. 260).  Plaintiff also stated she was unable to walk without shoes and was only able to wear a "soft style of sandal or sneakers."  Id. Dr. Pearce debrided the callous lesions on Plaintiff's right foot, which resulted in a marked improvement of Plaintiff's pain.  Id.  Indeed, on a follow-up visit, on August 17, 2004, Plaintiff reported a 75% improvement since her initial visit and rated her pain at the end of the day as a four on a scale of one to ten.  (Tr. 258).  Plaintiff was also able to wear regular sneakers to the appointment.  Id.  Plaintiff's pain returned after she ceased her treatments with Dr. Pearce.  (Tr. 251).  Dr. Pearce reinstituted the debriding and ordered Plaintiff an orthodic insert for her shoes.  Id.  Plaintiff reported a decrease in her pain immediately after having a treatment, but claimed she could not go longer than a week to ten days before her pain returned.  (Tr. 243).

On October 14, 2004, Plaintiff participated in an eight-week study for individuals with sleep disorders in fibromyalgia.  (Tr.234-42).  During the study, Plaintiff underwent several examinations.  In those examinations, Plaintiff indicated sixteen (out of a possible eighteen) positive tender point sites.  (Tr. 234).  Throughout the study, Plaintiff reported an improvement in insomnia symptoms but no real improvement in her fibromyalgia symptoms. Id.

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through the date of the decision.  (Tr. 17, 22).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 17, 22).  At steps two and three, the ALJ held:

> The medical evidence thus indicates that the claimant has

> fibromyalgia, status post foot injury, osteoarthritis, and disorders
> of the spine, impairments that are "severe" within the meaning of
> the Regulations.

(Tr. 18).  The ALJ further determined Plaintiff's affective disorder was not severe as it resulted in only mild restrictions or difficulties and Plaintiff had never experienced an episode of decompensation of extended duration.  (Tr. 18-19).  In addition, the ALJ found Plaintiff's impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 19).

The ALJ determined Plaintiff retained the residual functional capacity ("RFC") for light exertional level work with a sit/stand option in 15 minute cycles.  (Tr. 20).  Specifically, the ALJ found Plaintiff should "avoid ladders or unprotected heights, avoid proximity to heavy moving machinery, and avoid unusual stress."  Id.  Additionally, the ALJ determined that Plaintiff could "occasionally bend, crouch, kneel, stoop, squat or crawl," "must avoid operation of foot controls with the right foot," "avoid continuous pushing and pulling of arm controls," and "must elevate her legs to hip level when seated."  Id.   In making his findings regarding Plaintiff's RFC, the ALJ found Plaintiff's testimony concerning her symptoms and limitations not credible to the extent Plaintiff claimed she was disabled and precluded from all work activity.  (Tr. 19).

At step four, the ALJ determined Plaintiff no longer retained the ability to perform her past relevant work and therefore, proceeded to step five.  (Tr. 21).  At step five, the ALJ determined that based on Plaintiff's age, educational background, work experience, and residual functional capacity, Plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy."  (Tr. 22).  In making this determination, the ALJ utilized the testimony of a vocational expert (the "VE").  Therefore,

the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  Id.

III.   ANALYSIS

        A.   **The Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.**      <u>**Issues on Appeal**</u>

Plaintiff argues one issue on appeal.  Plaintiff believes the ALJ's decision is internally

inconsistent in that at step four, the ALJ found Plaintiff unable to perform any of her past

relevant work, which was both sedentary and light exertional level work.  However, at step

five, the ALJ found Plaintiff able to perform a significant range of light duty work.  (Doc. 12,

pp. 3-4).  Plaintiff argues that "[i]t is internally inconsistent to indicate that the claimant could

not perform any of her past relevant work, a group that included both sedentary and light

duty work, but then later in the decision indicate that she can perform other light and

sedentary duty work."  (Doc. 12, p.5).  The Commissioner responds that there is no

inconsistency because the ALJ examined different jobs in finding Plaintiff could perform

other work which exists in the national economy.  (Doc. 13, p.6).  The Commissioner states

"[t]he Regulations do not prohibit the ALJ from choosing jobs for a claimant [at step 5] that

have the same exertional level as her past relevant work."  <u>Id.</u>

The Court agrees with the Commissioner that the ALJ's decision is not inconsistent.

It is certainly possible for an individual to be unable to perform certain light duty work, while

being able to perform other jobs in the light duty category.  In his decision, the ALJ found

Plaintiff retained the RFC for light exertional level work with a sit/stand option in 15 minute

cycles.  (Tr. 20).  At the hearing, the ALJ asked the VE whether a hypothetical individual

Plaintiff's age with her educational and work history and who could perform light work with

the additional limitations of needing to avoid: ladders and unprotected heights, the operation

of a heavy moving machinery, unusual stress, and the operation of foot controls with her

right foot; occasionally bending, stooping, crawling, kneeling and crouching and requiring a

sit/stand option of 15 minute cycles could perform any of Plaintiff's past work.  (Tr. 304-05).

The VE answered in the negative.  (Tr. 305).  The ALJ then asked if that same hypothetical individual, with no skills or semi-skills could perform any entry level jobs.  Id.  The VE responded that the hypothetical individual could perform three positions: (1) a warehouse checker, which is a light position with a SVP of 2, (2) an order caller, a light position with an SVP of 2 and (3) a surveillance system monitor, a sedentary position with an SVP of 2.  Id.

What Plaintiff's argument fails to consider is that the ALJ assigned several non-exertional limitations.  It is these non-exertional limitations which most likely rendered Plaintiff's past work outside her RFC.  The three new positions offered by the VE, while light and sedentary like Plaintiff's past work, would accommodate Plaintiff's non-exertional limitations (unlike her past work).  Accordingly, the undersigned finds no inconsistency in the ALJ's decision and believes it is supported by substantial evidence.

## IV.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four, 42 U.S.C. 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.


**DONE AND ORDERED** at Jacksonville, Florida, this  20th  day of March, 2007.


_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record